UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN HALL #434965,

                Plaintiff,                         Case No. 08-14709

vs.                                          DISTRICT JUDGE AVERN COHN
                                          MAGISTRATE JUDGE STEVEN D. PEPE
MILLICENT WARREN,
KATHERINE CORRIGAN,
GERALDINE WILSON,
MICHAEL MARKEE, FRED FOLTS,
and JOSEPH R. BURTCH, M.D.,

                Defendant(s).

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. #18),
AND DEFENDANT'S MOTION TO DISMISS (DKT. #23)**

This is a *pro se* prisoner lawsuit under 42 U.S.C. § 1983 alleging violation of the Eighth Amendment. At all times relevant to this action, Plaintiff was incarcerated in Lapeer, Michigan at the Thumb Correctional Facility ("TCF") of the Michigan Department of Corrections ("MDOC"). He was transferred to TCF from the Bellamy Creek Correctional Facility ("IBC") and is currently located at the Ryan Correctional Facility ("RRF"), both of which are part of the MDOC. Plaintiff alleges that, while incarcerated at TCF, Defendants violated his rights by unreasonably exposing him to environmental tobacco smoke ("ETS") for three months, despite an Accommodation Notice stating he required tobacco-free housing. Plaintiff seeks compensatory damages of $50,000 and punitive damages of $500,000 from each Defendant among other claims for relief (Complaint, p. 3).

1

On February 5, 2009, Defendants Warren, Corrigan, Wilson, Markee and Folts moved for summary judgment pursuant to Fed. R. Civ. P. 56(b) asserting no violation of the Eighth Amendment occurred, no personal involvement by Defendant Warren, and qualified immunity (Dkt. #18). On February16, 2009, Defendant Burtch moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) asserting non-exhaustion of administrative remedies and failure to state a claim (Dkt. #23). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #8). For the reasons stated below, it is **RECOMMENDED** that Defendants Warren, Corrigan, Wilson and Markee's motion for summary judgment and Defendant Burtch's motion to dismiss be **GRANTED**, and Defendant Folts' motion for summary judgment be **DENIED**.

## I.   BACKGROUND

On December 22, 2006, Plaintiff was transferred from IBC to TCF. Upon his arrival, he received a health care screening and was placed in Cord Unit, which is not a tobacco-free unit.[1] The transfer records from IBC indicate that Plaintiff had a Special Accommodation Notice for housing dated May 18, 2006 (Dkt. #18, Ex. 1-B, p. 15).

Defendants are Warden Millicent Warren, Assistant Deputy Warden ("ADW") Katherine Corrigan, Resident Unit Manager ("RUM") Geraldine Wilson, Assistant Resident Unit Supervisor ("ARUS") Michael Markee, ARUS Fred Folts, and Joseph R. Burtch, M.D. all of whom are assigned to TCF.

On March 8, 2007, Plaintiff filed Grievance No. TCF-07-03-0175-03c, against Michael Markee alleging that he had ignored Plaintiff's requests to be moved into tobacco-free housing

---

[1] While smoking is prohibited in all housing units at TCF, prisoners housed in a tobacco-free unit are not allowed to possess any smoking paraphernalia.

as required by his Special Accommodation Notice, and this had caused Plaintiff's health problems to worsen due to exposure to ETS (Dkt. #18, Ex. 1-A, p. 1).  The Step I response, signed by Geraldine Wilson, noted that all units at TCF were smoke-free, but that Plaintiff had not been informed that his request for a transfer needed to go to Fred Folts, the ARUS for the tobacco-free housing unit (Burns Unit) (*id.* at 2).  RUM Wilson also noted that she spoke to ARUS Folts, who stated he had received a kite from Plaintiff approximately two weeks earlier, but that he did not have any empty bottom bunks at the time.  Plaintiff also had a Special Accommodation order, issued May 18, 2006, for a bottom bunk only.  (Corrigan Feb. 4, 2009 affidavit, Dkt. #18, Ex. 1, ¶¶ 8, 12).  Because of Plaintiff's grievance, he was placed at the top of the waiting list for a transfer to Burns Unit.

On March 22, 2007, Plaintiff filed a Step II appeal alleging that he was threatened with a transfer to another facility for filing his initial grievance (*id.* at 3).  The Step II response, signed by Warden Millicent Warren, stated that Plaintiff had been moved to tobacco-free housing on March 24, 2007, and the grievance was considered resolved (*id.* at 4).

On March 27, 2007, Plaintiff filed a Step III appeal alleging that because he had not been assigned to tobacco-free housing upon his arrival at TFC, he had developed additional medical problems (*id.* at 3).  The Step III response indicated that the issue which led to the initial grievance had been resolved, and that the responses at Step I and Step II were appropriate (*id.* at 5).

## II.   ANALYSIS

### A.   Legal Standards

#### 1.   *Summary Judgment*

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

4

for trial." Fed. R. Civ. P. 56(e).

### 2.      *Dismissal*

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which

relief can be granted."  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as

a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint

is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's

motion to dismiss, a judge must accept as true all of the factual allegations contained in the

complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Erickson v. Pardus*, 127 S.Ct.

2197, 2200 (2007).  "Rule 12(b)(6) does not countenance . . .  dismissals based on a judge's

disbelief of a complaint's factual allegations," *Twombly*, 550 U.S. at 556 (quoting *Neitzke v.

Williams*, 490 U.S. 319, 327 (1989)).

"However, while liberal, this standard of review does require more than the bare

assertion of legal conclusions."  *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th

Cir. 1994).  "In practice, a . . . complaint must contain either direct or inferential allegations

respecting all the material elements to sustain a recovery under some viable legal theory."  *In re

DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny

Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir.1988)).  *See also, Morgan v. Church's

Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal

conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d

928, 930 (6th Cir. 1987) (*per curiam*) (mere conclusions are not afforded liberal Rule 12(b)(6)

review).

*Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly* notes that under a "literal reading of *Conley*'s 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561. *Twombly* rejects this literal reading of *Conley* and requires that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley*, *Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a "'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

The Supreme Court expanded upon its analysis in *Twombly* and described a two-pronged approach to be used when considering a motion to dismiss. *Ashcroft v. Iqbal*, ---- U.S. ----, 129 S.Ct. 1937 (2009). First, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.*

### B.   Factual Analysis

#### 1.   *Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA") a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." As noted above, the PLRA requires a prisoner to follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may

6

bring a cause of action in federal court. *Woodford v. Ngo*, 548 U.S. 81 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedures or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. Policy Directive Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD"). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies.

MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before they are deemed to have exhausted their claims (Dkt. #23, Ex. E, MDOC PD

7

03.02.130 (Effective March 5, 2007)).  The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control.  PD § P.  If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process.  On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved.  PD § R.  This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution.  PD § V.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form.  PD § BB.  The Step II respondent is designated by the Policy Directive.  PD § DD.  If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form.  The Grievance and Appeals Section, on behalf of the MDOC Director, is the respondent for Step III appeals.  PD § GG.

Failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216.  Only Defendant Burtch raised the issue of non-exhaustion, thus the analysis applies solely to him.  Plaintiff pursued his grievance through Step III of the process, therefore it is necessary to determine if he followed all necessary procedures before it can be deemed properly exhausted.  Since its amendment effective December 19, 2003, a properly filed grievance must include the "[d]ates, times, places, and names of all those involved."  PD § R. Plaintiff did not name Defendant Burtch in the grievance, thus he did not comply with the procedures and did not properly exhaust his administrative remedies against Defendant Burtch. Plaintiff argues that he did not know Dr. Burtch's name at the time he filed the grievance, and by stating "I need to see the doctor" this was sufficient to have exhausted.  The Policy Directive

states that "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement."  PD § E.  Plaintiff's argument that the statement "I need to see the doctor" satisfies this requirement is not sufficient.  The gist of the grievance was about not being placed in a tobacco-free housing unit.  His statement of "I need to see the doctor and be moved immediately" makes no direct or implied assertion that Dr. Burtch or any doctor did anything wrong.  This cannot be treated as a grievance against some unidentified doctor. Therefore, Plaintiff has not exhausted his claim against Defendant Burtch, and he is entitled to dismissal.  Plaintiff's claim against Defendants Warren, Corrigan, Wilson, Markee and Folts involves his request to be reassigned to tobacco-free housing, which was effected on March 24, 2007, two days after he filed his Step II appeal.

### 2.   *Liability of Supervisory Personnel*

Liability of supervisory personnel under 42 U.S.C. § 1983 must be based on more than the right to control employees.  *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982).  A supervisory official can only be held liable if it is shown that the individual encouraged a specific incident of misconduct or in some way directly participated.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a 'mere failure to act.' *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff has made no showing that Defendants Warren and Burtch actively participated in a violation of Plaintiff's constitutional rights.[2]  He merely concludes that Defendant Warren

---

[2] As noted in the previous section Dr. Burtch is also entitled to dismissal for Plaintiff's failure to exhaust.

9

"is responsible for whatever happens in her facility" (Dkt. #27, p. 32), and that Defendant Burtch "was in complete charge of all matters and staff in the health care department that concerned prisoners [*sic*] medical needs and their health related issues" (Dkt. #29, p. 6-7).  Because Plaintiff has failed to show personal involvement on the part of Defendants Warren and Burtch, they are not subject to liability as supervisory officials under 42 U.S.C. § 1983.

### 3.   *Plaintiff's Eighth Amendment Claim*

In the context of medical care, a prisoner's Eighth Amendment right to be free of cruel and unusual punishment is violated only when a prisoner can demonstrate that a "deliberate indifference" has been shown to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To demonstrate a "deliberate indifference" to his medical needs, a prisoner must show that Defendant's actions rise to the level of an "unnecessary and wanton infliction of pain." *Id.* at 104.  Mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Id*. at 106.  Additionally, a prisoner seeking to prevail on an Eighth Amendment claim under 42 U.S.C. § 1983 must also show that his medical need is "serious." *Wilson v. Steiner*, 501 U.S. 294, 297 (1991).

The Sixth Circuit has held that mere exposure to ETS, without more, does not constitute an Eighth Amendment violation. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).  The test for determining deliberate indifference based on exposure to ETS has both objective and subjective components. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  To satisfy the objective component, a prisoner must show a medical need that is "sufficiently serious." *Hunt* at 735.  The exposure to ETS must cause more than "mere discomfort or inconvenience." *Id.*  To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs. *Helling* at 32.  The Supreme Court has

10

consistently held that the denial of adequate medical care can violate the Eighth Amendment.
*See, e.g., DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 198-99 (1989).

In *Talal v. White*, the Sixth Circuit found that the plaintiff had sufficiently alleged a
deliberate indifference claim. 403 F.3d 423 (6th Cir. 2005). In that case, the plaintiff satisfied
the objective component of the *Helling* test by providing documentation showing that he was
allergic to ETS. Additionally, medical staff had recommended that he be placed in a non-
smoking unit. *Id.* at 427. He satisfied the subjective component of the *Helling* test by including
medical records and a limited activity notice that referenced his allergy and his need for a non-
smoking cell mate. He also alleged that, although there was a non-smoking policy in place, it
was not enforced. *Id.* at 427-28.

Here, Plaintiff has provided medical records that indicate he was treated for shortness of
breath and tightness in his chest due to exposure to second-hand smoke, and was prescribed
Albuterol (Dkt. #31, Ex. 1-B, p. 5). He also attached a copy of the Special Accommodation
Notice dated April 15, 2005, indicating he was to have a "permanent" assignment to tobacco-free
housing (Dkt. #27, Ex. 1-B, p. 6).

Defendant Folts alleges that this Special Accommodation was superceded by one dated
May 18, 2006, which did not mention that Plaintiff required tobacco-free housing and only
mentioned special accommodations for a bottom bunk and a heat-related illness (Dkt. #18, Ex. 1-
B, p. 19, and Folts Feb. 4, 2009 affidavit, Ex. 4, ¶ 5). Yet, according to MDOC Policy Directive
04.06.160, which covers medical details and special accommodation notices (Effective 1/10/00 -
the version in effect at the time Plaintiff's Special Accommodation Notices were issued), a
Special Accommodation Notice that is labeled "permanent" does not expire. PD § F. A
currently valid Special Accommodation Notice can only be cancelled with approval from an

appropriate medical service provider after examination of the prisoner.  PD § K.  Defendants have not furnished any proof that Plaintiff's Special Accommodation Notice dated April 15, 2005, was ever cancelled, thus Plaintiff should have been assigned to tobacco-free housing upon his arrival at TCF.  Yet, the only Special Accommodation Order that was listed on Plaintiff's medical transfer form was that dated May 18, 2006, that did not mention tobacco-free housing, and, inexplicably, Plaintiff refers specifically to this medical transfer for the proposition that Defendants knew of his permanent tobacco-free Special Accommodation when he arrived at TCF (Dkt. #27, p. 29).  This situation differs from *Talal*, however, because in that case the facility was not designated as non-smoking, and there were units in which the inmates were allowed to smoke. Here, however, all of TCF is designated as non-smoking; the tobacco-free housing unit is just a further restriction on the non-smoking policy.

As for the subjective component of the test, Plaintiff has provided copies of numerous "kites" he sent to Defendants between December 23, 2006, and March 1, 2007 (Dkt. #27, Ex. 1-B, pp. 8-21).  On December 23, 2006, Plaintiff sent kites to Defendants Markee and Folts specifically mentioning his Special Accommodation and asking to be moved.  On December 29, 2006, Plaintiff sent kites to Defendants Warren, Corrigan, Wilson, Markee and Folts again mentioning his Special Accommodation and asking to be moved.  On January 4, 2007, Plaintiff sent kites to Defendants Wilson, Markee and Folts requesting that he be moved to the tobacco-free unit.  On February 28, 2007, Plaintiff sent kites to Defendants Wilson and Folts stating he needed to get out of the Unit to which he was currently assigned.  On March 1, 2007, Plaintiff sent kites to Defendants Corrigan and Wilson stating he would not be sending any further kites because he had not received any responses, and complaining that he could not breathe.

In their affidavits, Defendants deny ever receiving most of the kites, but in the Step I

12

response to Plaintiff's grievance dated March 15, 2007, there is an indication that Defendant

Folts received a kite from Plaintiff "approximately 2 weeks ago" (Dkt. #18, Ex. 1-A, p. 2).

Defendant Folts acknowledged this in his affidavit as well.  (Folts Feb. 4, 2009 affidavit, Dkt.

#18, Ex. 3, ¶ 6).  Additionally, in his affidavit, Defendant Markee avers that on January 3, 2007,

he reviewed Plaintiff's file and saw the April 15, 2005, Special Accommodation Notice and

"assumed that [it] was current and valid" (Markee Feb. 4, 2009 affidavit, Dkt. #18, Ex. 2, ¶ 5).

Defendant Markee notified Defendant Folts of the Special Accommodation on January 9, 2007,

but was told that Plaintiff could not be moved to the top of the waiting list, and the facility's

smoke-free policy mitigated the need for an immediate transfer.  This is a significant difference

from Defendant Folts' affidavit, in which he avers that he did not become aware of Plaintiff's

request to move until early March, 2007 (Folts Feb. 4, 2009 affidavit, Dkt. #18, Ex. 3, ¶ 6).

Although Plaintiff's kites raise some questions (*e.g.*, if he sent kites to five individuals and none

of them responded, why did he name only ARUS Markee in his grievance?), they, along with the

discrepancy between Markee's and Folts' affidavits – viewed in the light most favorable to

Plaintiff – raise enough of a genuine issue of material fact such that summary judgment would be

inappropriate, at least as to Defendant Folts.  Defendant Markee's affidavit establishes that

Defendant Folts became aware of Plaintiff's Special Accommodation no later than January 9,

2007, yet he apparently took no remedial action until after Plaintiff filed his grievance on March

8, 2007.  The unrebutted evidence is that ARUS Folts of Burns Unit was the appropriate

decision-maker for a move to that unit.


Defendant ARUS Markee's affidavit notes Plaintiff as assigned to Markee's Cord Unit

by Control Center staff, and Markee notified Folts about Plaintiff's April 15, 2005, Special

13

Accommodation for tobacoo-free housing, but Folts said he could not move Plaintiff to the top of the Burns Unit waiting list.  Apparently Folts did precisely that once Plaintiff filed his grievance.  Thus, it appears Markee took appropriate remedial action such that no reasonable fact finder could find Markee deliberately indifferent.  The same cannot be said with regard to Defendant Folts.  Viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that Folts was aware of Plaintiff's Special Accommodation Notice for tobacco-free housing on January 9, 2007, and failed to move him to the top of the waiting list for his tobacco-free unit until early March when he became aware of the grievance.  This could be found to be deliberate indifference to Plaintiff's serious medical need.

A second theory of potential liability against the other Defendants could potentially relate to their failure to take steps to stop illicit tobacco use in Cord Unit where Plaintiff was housed from December 2006, to March 24, 2007, and where he asserts he was exposed to ETS. Defendant Folts, ARUS of Burns Unit, could not be found liable for any non-enforcement of smoking bans in Cord Unit.  All of the Defendants in their affidavits attest to the fact that the smoking ban in the units is strictly enforced.

In his affidavit, Plaintiff claims that the ETS in his housing unit was "intolerable at times" (Dkt. #25, ¶ 9).  This allegation of disregard for the non-smoking policy in place at TCF does not rise to the same level of specificity in *Talal*, where the plaintiff was able to show numerous specific examples of disregard for the non-smoking policy by the defendants, and the plaintiff had filed several grievances on smoking violations that had received no responses from officials.  403 F.3d at 428.  The facts in *Talal* on this issue are in stark contrast to those of the present case, where Plaintiff's sole grievance was acted upon resulting in his reassignment to tobacco-free housing.  The Sixth Circuit has held that there is no deliberate indifference where a

14

prisoner fails to allege a single incident where a named defendant had knowledge of a smoking violation and failed to act. *Wilson v. Hofbauer*, 113 Fed. App'x. 651, 653 (6th Cir. 2004) (unpublished). *See also Moorer v. Price*, 83 Fed. App'x. 770, 773 (6th Cir. 2003) (unpublished) (imperfect enforcement of MDOC Policy Directive 01.03.140 regarding smoking in Department occupied buildings does not equate to deliberate indifference). In *Hofbauer*, the plaintiff alleged that certain prison officials had violated his Eighth Amendment rights by not enforcing the prison's non-smoking policy and by not moving him into smoke-free housing. 113 Fed. App'x. at 652. The Court held that even if the plaintiff had a serious medical need, he failed to show a deliberate indifference to that need because he did not allege a single instance where the defendants ignored violations of the non-smoking policy. *Id.* at 653. Here, Plaintiff does not list specific instances of violations of TCF's non-smoking policy, nor does he state which of the Defendants had knowledge of violations. Plaintiff simply states that "smoking was, is, and has been permitted"; "smoking continued to be widespread throughout the residential areas within (TCF), this is a well known fact"; "there was a problem with (ETS) throughout the units . . . at every facility in Michigan"; "[i]t is clear smoking was permitted within (TCF) and the defendants knew"; and "in this particular instance 'ALL' the defendants knew smoking was permitted in the units" (emphasis in original) (Dkt. #27, pp. 9-10, 27, 32-33). As in *Hofbauer*, Plaintiff has fallen short of sustaining a claim of deliberate indifference based on disregard for a non-smoking policy. Conclusory allegations of unconstitutional conduct are insufficient to state a claim for relief. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). Therefore, Plaintiff has not satisfied the subjective component of the *Helling* test as to Defendants Warren, Corrigan, Wilson and Markee.

### 4.   *Qualified Immunity*

Government officials who perform discretionary functions are also generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995). A Court may find it beneficial to answer two questions when ruling upon a qualified immunity issue. One inquiry is whether, considered in the light most favorable to the party claiming injury, the facts establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 522 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The other question is whether that constitutional right was clearly established at the time. *Id.*; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998). Under *Saucier*, it was mandated that these questions be addressed in order, but that requirement has since been relaxed. *See Pearson v. Callahan*, ---- U.S. ----, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.")

The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendants, but rather turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Harlow*, 457 U.S. at 818-19; *Mackay v. Dyke*, 29 F.3d 1086, 1094 (6th Cir. 1994).

16

Qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one that a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, even where the general rule is clearly established, it may be open to question whether the defendant's specific action comes within the scope of the general rule. Officials may be entitled to qualified immunity when their decision is reasonable, even though mistaken, in determining that their action did not fall within the scope of a clearly established general rule. *Id.*

Because, as explained above, Defendants Burtch and Warren are already entitled to dismissal and summary judgment, respectively, qualified immunity need only apply to Defendants Corrigan, Wilson, Markee and Folts. Based on the above analysis, there is not sufficient evidence to support a finding of deliberate indifference by Defendants Corrigan, Wilson and Markee, thus they did not violate Plaintiff's Eighth Amendment rights. Therefore, Defendants Corrigan, Wilson and Markee are entitled to qualified immunity. Yet, Defendant Folts' course of action, or inaction, cannot as a matter of law be found as reasonable under the circumstances. When he first became aware of Plaintiff's Special Accommodation on January 9, 2007, he did nothing to remedy the situation. It was not until two months later, when Plaintiff filed his grievance, that Defendant Folts moved Plaintiff to the top of the waiting list for tobacco-free housing. The *Talal* case clearly established the law in the Sixth Circuit in 2005. Thus, Defendant Folts' actions could be found to have violated Plaintiff's clearly established Eighth Amendment rights. Therefore, Defendant Folts is not entitled to qualified immunity.

### III.   RECOMMENDATION

17

For the reasons indicated above, it is **RECOMMENDED** that Defendants Warren, Corrigan, Wilson, Markee and Burtch's motions be **GRANTED**, and Defendant Folts' motion be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474, U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: August 7, 2009                          s/Steven D. Pepe
Ann Arbor, Michigan                           United States Magistrate Judge

18

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 7, 2009.


s/Deadrea Eldridge
Generalist Deputy Clerk

19